UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**BRAD CHARLES FISHER** and
**JANET ELIZABETH FISHER**,

Debtors.

Case No.  **07-61338-7**

## *MEMORANDUM of DECISION*

At Butte in said District this 10th day of October, 2008.

In this Chapter 7 bankruptcy, the Trustee filed a Motion for Summary Judgment on September 26, 2008, which Motion is accompanied by a Brief in Support of Trustee's Motion for Summary Judgment and a Statement of Uncontroverted Facts.  The Trustee's Motion was filed in accordance with Mont. LBR 9013-1 in that the Trustee's Motion includes a notice provision advising Debtors and their counsel that they have ten days to file a responsive pleading and that "[i]f no objections are timely filed, the Court may grant the relief requested as a failure to respond . . . shall be deemed an admission that the relief requested should be granted."  Similarly,  Mont. LBR 7056-1(2) and (3) provide in relevant part: "Opposition to a motion for summary judgment, if any, must be filed within ten (10) days after the motion is served. ...  All material facts in the moving party's Statement of Uncontroverted Facts are

1

deemed to be admitted unless controverted by a Statement of Genuine Issues filed by the opposing party."  In the instant case, Debtors have not filed a response to the Trustee's Motion nor have Debtors filed a statement of genuine issues.  Thus, all material facts set forth in the Trustee's Statement of Uncontroverted Facts filed September 26, 2008, are deemed admitted.

Summary judgment is governed by FED. R. BANKR. P. 7056.  Rule 7056, incorporating FED. R. CIV. P. 56(c), states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).  The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery.  If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265  (1986)

(Brennan dissent) (citations omitted). *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible in evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S.

3

at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id*.

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

In the pending Motion for Summary Judgment, the Trustee seeks a summary ruling on his pending Motion for Turnover filed July 15, 2008, wherein the Trustee seeks an order from this Court directing Debtors to turnover all post-petition commissions earned as a result of Brad Fisher's prepetition Associates Agreement with American Family Life Assurance Company of Columbus ("Aflac"). Also pending, and related to the Trustee's Motion for Turnover, is Debtors' Motion to Abandon filed July 25, 2008, wherein Debtors argue that the Trustee should be directed to "abandon the renewal insurance commissions, as they have inconsequential value to the estate." A hearing on the above two matters is scheduled for November 4, 2008.

In the interim, the Trustee filed a Motion to Sequester Funds on August 5, 2008, and the Montana Department of Revenue joined in the Trustee's Motion to Sequester Funds on

September 2, 2008.  A hearing on whether the funds should be sequestered was held September 9, 2008, and following the hearing, the Court entered an Order on September 17, 2008, determining that all funds paid post-petition by Aflac to the Debtors for renewal income that was or is paid on policies that Brad Fisher sold prior to November 14, 2007, should be sequestered pending the Court's ruling on the Trustee's Motion for Turnover.[1]

In support of his request for a summary ruling, the Trustee has set forth the following undisputed facts:

> 1. Prior to the filing of his bankruptcy petition, the Debtor, Brad Fisher, was employed as a commissioned sales representative for American Family Life Assurance Company of Columbus ("Aflac"). Testimony of Brad Fisher, September 9, 2008, and Aflac Associate's Agreement, Trustee's Exhibit, Docket No. 127.
>
> 2. Brad Fisher became a State Sales Coordinator for Montana and Wyoming for Aflac.  *See* State Sales Coordinator Agreement, Docket No. 131 and testimony of Brad Fisher, September 9, 2008.
>
> 3. During his employment with Aflac, Brad Fisher built a successful business.  *See* Order of Court dated September 9, 2008.
>
> 4. Brad Fisher resigned his position as State Sales Coordinator for Aflac's Montana/Wyoming operation on June 15, 2005, and indicated at that time his intent to remain associated with Aflac in a different capacity. *See* Order of Court dated September 17, 2008, and Resignation Letter of Brad Fisher, Docket No. 132.
>
> 5. Brad Fisher remained as an associate with Aflac but did not sell any

---

[1] Debtors appealed the Court's September 17, 2008, Order granting the Trustee's Motion to Sequester Funds.  However, Debtors have not sought a stay of the Court's September 17, 2008, Order.  Moreover, Debtors' appeal of the September 17, 2008, order does not stay the pending proceeding as the Motion to Sequester Funds did not end the litigation on the merits, but was merely an intermediate request for relief pending a ruling on the Trustee's Motion for Turnover.  Thus, Debtors' Notice of Appeal filed September 29, 2008, does divest this Court of its jurisdiction to conduct further proceedings in this case.

>Aflac insurance policies after resigning as State Sales Coordinator in June of 2005. *See* Order of Court dated September 9, 2008, and testimony of Brad Fisher, September 9, 2008.
>
>6. Brad Fisher still receives income from renewals of insurance policies which he sold prior to June of 2005 and from "overrides" which he receives as a result of his position as State Sales Coordinator for Aflac (Collectively "renewal commissions"). *See* Order of Court dated September 9, 2008, and testimony of Brad Fisher, September 9, 2008.
>
>7. Pursuant to the provisions of both the Associate's Agreement and the State Sales Coordinator Agreement as of June of 2005, Brad Fisher had vested in his right to receive 100% of the commissions he had earned prior to June, 2005. *See* Associate's Agreement, paragraph Four (f) and State Sales Coordinator Agreement, paragraph 7(e)(iii), and also the testimony of Brad Fisher, September 9, 2008.
>
>8. Brad Fisher has made no claim of exemption in the renewal income. *See* Order of Court, September 17, 2008 and admission of Debtor's counsel at hearing on September 9, 2008, that no such exemption is available.
>
>9. Debtors filed a Chapter 11 petition on November 14, 2007 (Docket No. 1), and the case was converted to Chapter 7 on April 15, 2008 (Docket No. 6).

As the Trustee notes in his Statement of Uncontroverted Facts, Brad Fisher testified at the September 9, 2008, hearing. Following the September 9, 2008, hearing, the Court entered an Order on September 17, 2008, which Order recites the following factual background:

>In October of 1993, Brad accepted a position as a State Sales Coordinator for American Family Life Assurance Company of Columbus ("Aflac"). Exhibit B. However, Brad resigned his position as State Sales Coordinator for Aflac's Montana/Wyoming operation on June 14, 2005, and indicated at that time his intent to remain associated with Aflac in a different capacity. Exhibit A. During his employment with Aflac, Brad built a successful business that provided Debtors with a very comfortable income. For instance, the record reflects that Brad's1099 income from Aflac in 2005 was $315,972.00 and in 2004, his 1099 income from Aflac was $571,696.00. Unfortunately, despite Brad's substantial earnings, Debtors failed to file tax returns for numerous years and paid little if any

6

withholding taxes on such income.[2]

Brad did not sell any Aflac insurance policies after he resigned his State Sales Coordinator position in June of 2005. According to Brad, he basically did nothing from June of 2005 until January of 2007, when out of sheer boredom, Brad took a position with Lithia Chevrolet of Helena. Debtors' amended Schedules I and J filed April 1, 2008, show that Debtors' monthly income is $12,232.87 after subtracting payroll taxes, insurance and 401K payments. Debtors' monthly income includes Aflac renewal income of $8,444.00. Although Brad has not sold an Aflac insurance policy since June of 2005, Brad still receives commissions from the renewal of insurance policies previously sold, and Brad's present business income relates solely to the Aflac renewal commissions, which commissions are fully vested. Paragraph 5 of Brad's Associate's Agreement with Aflac signed in 1983 recites that "[a]fter fifteen (15) years of service with American Family [Aflac], the Associate [Brad] will have a vested right to receive 100% of the renewal commissions as earned payable on policies the Associate produced."

Brad's 1099 income from Aflac in 2007 was $112,589.62, or roughly $9,382.47 per month. Brad's 1099 income will admittedly decrease in 2008, but Brad testified at a prior hearing that Debtors quit paying rent at the business location in January of 2008 and were moving the Aflac office to their home, thereby saving the rent expense of $800.00 and the utility expense of $500.00. Brad testified that his office expenses would also decrease. Pursuant to Debtors' amended Schedule J filed April 1, 2008, Debtors' total monthly household expenses are $6,180.41, leaving Debtors with monthly net income of $6,052.46.

Debtors' amended Schedule B lists "[r]ight to future income from Aflac insurance renewals" but lists the current value of such income stream as $0.00. Debtors filed an amended Schedule F on May 5, 2008. Debtors do not claim any type of exemption in the Aflac renewal income. Debtors have not amended any of their schedules since May 5, 2008, even though Brad testified at the September 9, 2008, hearing that he quit his job at Lithia Chevrolet of Helena and has resumed selling insurance policies for Aflac, albeit not as a State Sales Coordinator.

---

[2] Debtors now have a substantial tax liability as a result of their failure to pay income taxes over numerous years. At a prior hearing, Debtors' attorney referred to the IRS as a "1,000 pound gorilla" because the IRS' liens far outweigh everything else in the case. Indeed, the IRS, in an amended Proof of Claim filed July 28, 2008, asserts a secured claim in the amount of $326,640.40, a priority claim of $105,199.05 and an unsecured claim of $868,460.21. The MDOR has filed three proofs of claim asserting secured claims totaling $146,576.10, priority claims totaling $29,856.42 and unsecured claims totaling $4,847.52.

The commencement of a case, whether voluntary, joint or involuntary, under any of the Chapters in Title 11 of the United States Code, creates an estate which consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In the context of Chapter 7 bankruptcies, once property is deemed an asset of the estate, it remains as such and may be administered by the Trustee for the benefit of the creditors unless the debtor is entitled to remove, and in fact affirmatively does remove, either a portion of the asset, or the entire asset, from the bankruptcy estate through the exemption process. *In re Binns*, 9 Mont. B.R. 386, 387 (Bankr. D. Mont. 1991).

Section 541(a) of the Bankruptcy Code defines "[p]roperty of the estate" to include "all the following property, wherever located and by whomever held:"

> (1) . . . all legal *or* equitable interests of the debtor in property as of the commencement of the case.

In discussing the broad definition of "property of the estate", this Court previously wrote:

> Section 541(a)(1) of the Bankruptcy Code is intended to include in the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." *In re Campbell (Balyeat Law Offices v. Campbell)*, 14 Mont. B.R. 132, 140-41 (9th Cir. BAP 1995). In *Campbell* the BAP wrote:
>
>> The legislative history indicates that the scope of § 541(a)(1) is broad. *See United States v. Whiting Pools, Inc.*, 468 U.S. 198, 205 (1983). Section 541(a)(1) is intended to include in the estate any property made available to the estate by any other provisions of the Bankruptcy Code. *Id.* (*citing* H.R. Rep. No. 95-595, p. 367 (1977)). Several provisions in the Code permit the trustee to recover property in which the debtor did not have a possessory interest when the bankruptcy petition was filed. *See, e.g.,* 11 U.S.C. §§ 543, 544, 547 & 548; *Whiting Pools,* 462 U.S. at 205. Thus, "[a]n estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions." *Owen v. Owen*, 500 U.S.

>    305, 308 (1991).

*In re Weatherwax*, 16 Mont. B.R. 304, 308-09 (Bankr. D.Mont. 1997).

On the particular issue of whether insurance renewal income is property of the estate, the Court finds the following passage instructful:

> In the present controversy the debtor maintains that his interest in the deferred compensation funds does not constitute property of the estate even under the broad language of § 541, since at the time of the filing of the petition the funds were beyond his control. "Control," however, is not the determinative factor .
>
> In *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the bankrupts filed bankruptcy petitions on September 27, 1961, and subsequently obtained income tax refunds. The refunds resulted from tax loss-carrybacks to prior years. The trustee contended the refunds constituted property of the estate under § 70(a)(5). The bankrupts claimed that on September 27 no funds were due from the Government since no refund could be claimed until the end of the year. The Supreme Court disagreed. An interest would not be disqualified as property because of "postponed enjoyment." The loss-carryback refund claim was held to be "sufficiently rooted in the pre-bankruptcy past" so that it constituted property of the estate under § 70(a)(5).
>
> *In re Wright*, 157 F. 544 (2d Cir. 1907), concerned a bankrupt who was a managing agent for a life insurance company under a contract which entitled him to collect renewal premiums on policies, written prior to his bankruptcy, so long as he continued to perform under his contract. The Second Circuit determined that the renewal premiums, payable after bankruptcy, were property of the estate pursuant to Section 70 of the Bankruptcy Act despite the requirement under the contract of continued performance after the bankruptcy.
>
> See also *Mutual Trust Life Insurance Company v. Wemyss*, 309 F.Supp. 1221 (D.C.Me.1970); *Matter of Fahys*, 18 F.Supp. 529 (D.C.N.Y.1937).
>
> The scope of § 541 is much broader than § 70(a):
>
> "The scope of this paragraph (s 541(a)(1) ) is broad. It includes all kinds of property, including tangible or intangible property, causes of action, and all other forms of property currently specified in section 70a of the Bankruptcy Act...." S.Rep.No.95-989, 95th Cong. 2d Sess. 82, reprinted in (1978) U.S.Code Cong. & Ad.News 5787, 5868.

9

> "It is important to keep in mind, therefore, that the underlying theory of section 541(a)(1) is to bring into the estate all interests of the debtor in property as of the date the case is commenced. Thus, as a general rule, the estate created under section 541 will include all legal or equitable interests of the debtor in property, both tangible and intangible, including exempt property, as of the date the case is commenced." 4 COLLIER ON BANKRUPTCY, ¶ 541.06 (15th Ed.).

In *In re Marshburn*, 5 B.R. 711, 6 BCD 922, (Bkrtcy., D.Colo.1980), the debtor was employed as an insurance agent with State Farm Insurance Company. The debtor was party to an agreement providing that on termination he would receive a percentage of net premium collections and renewal premiums on insurance policies sold by him. The debtor's employment was terminated in October 1979; he filed a petition in bankruptcy in April 1980. The trustee claimed that the funds which were to be paid after the filing of the petition constituted property of the estate under § 541(a). The court considered the fact that the payments were only minimally dependent upon post-petition and post-termination services; i.e., the payments were dependent upon the substantial services rendered by the debtor before termination rather than post-petition or post-termination services. Therefore, the court held the funds payable post-petition to be property of the estate.

*In re Parker*, 9 B.R. 447, 7 BCD 456 (Bkrtcy., M.D.Ga.1981), presents a factual situation similar to that found in *Marshburn, supra*. The debtor in *Parker* was employed by the American Family Life Assurance Company. Pursuant to his employment contract he had an unconditional vested right to receive renewal commissions. The debtor terminated his employment shortly before he filed his petition in bankruptcy; thus, post-petition services were not required. The court cited several cases decided under the former Bankruptcy Act to the effect that renewal commissions under similar circumstances were property of the estate under § 70(a). The court then observed that § 541 has a much broader scope than § 70(a): "It is almost limitless under the new Code." *In re Parker*, 9 B.R. 447, 449. Further, the court correctly noted that the debtor's estate at the time of filing consists of all legal and equitable interests in property as of the commencement of the case including that property necessary for a fresh start which the debtor could then exempt. The court concluded, therefore, that the renewal commissions were property of the estate under § 541.

The debtor cites *In re Harter*, 10 B.R. 272 (Bkrtcy., N.D.Ind.1981). *Harter* involved an entirely different situation, however, and is inapposite to the facts and laws in the instant case. The debtor, Harter, had retired from the Army in 1975 with a pension of approximately $6,000 payable annually providing that he was alive on the first day of each month. Judge Rodibaugh pointed out that Section

10

> 1315 of Title 10 of the United States Code provides that a member of the armed forces retired for length of service is entitled to " 'retired pay.' " Judge Rodibaugh viewed the Army benefits as "future wages" and concluded that those benefits were not property in which the debtor had an interest under Section 541 of the Code.

*In re Iler*, 18 B.R. 855, 856-58 (Bankr. D.Tenn. 1982).

Particularly on point is the case of *In re Parker*, 9 B.R. 447, (Bankr. M.D.Ga.1981), as discussed in *Iler*. *Parker* is factually indistinguishable from the instant case and there, the court concluded that the renewal commissions were property of the bankruptcy estate under § 541. This Court concurs with the *Parker* Court that Brad's renewal income is property of the bankruptcy estate under § 541 because the renewal income is derived from substantial services rendered by Brad prior to November 14, 2007, and is not dependent upon services rendered by Brad post-petition.

The Court finds that there are no disputed material facts in this case. The Court further concludes that the Trustee is entitled to judgment as a matter of law. Accordingly, the Court will issue the following separate order:

IT IS ORDERED that the Trustee's Motion for Summary Judgment is GRANTED; and any renewal income that is paid after November 14, 2007, on policies that Brad Fisher sold for American Family Life Assurance Company prior to November 14, 2007, is property of the bankruptcy estate.

IT IS FURTHER ORDERED that the Trustee's Motion for Turnover filed July 15, 2008, is GRANTED; and Debtors shall turnover all post-petition commissions relating to the pre-petition agreement with American Family Life Assurance Company to the Trustee within 15 days of this Order.

   IT IS FURTHER ORDERED that Debtors' Motion to Abandon filed July 25, 2008, is DENIED.

            BY THE COURT

            */s/ Ralph B. Kirscher*
            HON. RALPH B. KIRSCHER
            U.S. Bankruptcy Judge
            United States Bankruptcy Court
            District of Montana